RECEIVED
OCT 21 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT         b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DAVIN HANKS,                           CIVIL ACTION
    Plaintiff                          SECTION "P"
                                       NO. 1:13-CV-02999
VERSUS

TIM KEITH, et al.,                     JUDGE TOM STAGG
    Defendants                         MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
---

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Davin Hanks ("Hanks") on November 5, 2013 (Doc. 1) and amended on March 12, 2014 (Doc. 17). The named defendants are Tim Keith (warden of the Winn Correctional Center ("WCC")in Winnfield, Louisiana) and Pamela Horne (chief of security at WCC).

Hanks alleges that, while he was confined in WCC, he did legal work for several inmates, then accidentally lost their legal papers. Hanks contends those inmates are angry with him and have threatened to harm him. Hanks contends that, in September 2013, he requested protective custody from those inmates and was placed in the Cypress Unit (where defendant Horne was the unit manager). However, some of the inmates Hanks feared were able to enter the Cypress Unit, even though they are not housed there, and both threatened and physically assaulted Hanks in the Cypress Unit. Hanks contends that defendants failed to protect him from an assault by Christopher Miller on October 25, 2013. Hanks asks for

injunctive relief and monetary damages. Hanks is currently confined in WCC.

In December 2013, the District Judge granted Hanks' motion for a temporary restraining order (Doc. 1) and ordered defendants to place Hanks in true protective custody (Doc. 6).[1]

Defendants answered the complaint (Docs. 14, 18) and filed a motion for summary judgment (Docs. 24, 30), to which Hanks responded (Docs. 29, 31).

## Law and Analysis

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to

---

[1] Although Hanks filed a motion for a hearing on a preliminary injunction after his TRO was granted (Doc. 19), and defendants responded to that motion (Doc. 13) However, a hearing was never held, neither a preliminary injunction or a permanent injunction was ever ordered, and the TRO was never dissolved. See Fed.R.Civ.P. rule 65(b).
Defendants appear to complain, in their motion for summary judgment, that Hanks was granted injunctive relief before they were served (Doc. 24). However, Hanks' TRO was granted in compliance with Fed.R.Civ.P. rule 65(b).

it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory

allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Exhaustion

Defendants contend in their motion for summary judgment that Hanks failed to exhaust his administrative remedies as to his claim that defendants failed to protect him from an attack by inmate Christopher Miller. That event took place on October 25, 2013.

1.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). Jones v. Bock, 549 U.S. 199, 211, 237 S.Ct. 910, 918-919 (2007). Exhaustion is mandatory, irrespective of the forms of relief sought and offered through administrative remedies. Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001). The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002). Resort to a prison grievance process must precede resort to a court. Porter, 534 U.S.

at 529, 122 S.Ct. at 990.

Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010), citing Carty v. Thaler, 583 F.3d 244, 252 (5th Cir. 2009), cert. den., 559 U.S. 1106, 130 S.Ct. 2402 (2010). Similarly, while it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact. Dillon, 596 F.3d at 266, citing Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir. 1999).

Since exhaustion is an affirmative defense, the burden is on the defendants to demonstrate that the plaintiff failed to exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910 (2007). Defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor. Dillon, 596 F.3d at 266, citing Martin v. Alamo Cmty. Coll. Dist., 353 F.3d 409, 412 (5th Cir. 2003).

2.

Defendants show, through an affidavit of Mona Heyse (Doc. 24), that Christopher Miller filed a first-step grievance on October 28, 2013 alleging a failure to protect him from inmate Hanks due to the October 25 fight (No. 2013-1140) (Doc. 24, p. 14/28). Heyse further states in her affidavit that Hanks filed his ARP on the

same issue on October 29, 2013 (Doc. 24, p. 16/28). Heyse states in her affidavit that, since Miller's affidavit was filed first, she did not respond to Hanks' affidavit, but instead sent him a copy of her response to Miller's affidavit (Doc. 24, p. 18/28), which she states is in accordance with the Louisiana Department of Corrections handbook (Doc. 24, p. 28/28). There is nothing in the record before this court that indicates that Hanks' grievance was assigned a number, or that he was told that the response to Miller's affidavit served as the response to his grievance, as well, and that he could appeal that response (Doc. 24). The response to Miller's grievance does not reference Hank's grievance (Doc. 24, p. 18/28).

Subsequently, Hanks filed a second first-step grievance on the same claim on January 2, 2014 (Doc. 24, p. 11/28). Heyse states in her affidavit that Hanks voluntarily withdrew that grievance on January 29, 2014 (Doc. 24, p. 9/28). Hanks filed a third first-step grievance on January 29, 2014, alleging that he accidentally withdrew the January 2 grievance and that he never received the response to his initial grievance filed in October 2013 (Doc. 24, p. 6/28). Heyse states in her affidavit that she rejected Hanks' January 29 grievance, explaining that she had responded to Miller's October 2013 grievance instead of to Hanks', that a copy of the response to Miller's grievance had been sent to Hanks, that he had withdrawn his January 2 grievance, and that, in any event, that

grievance was untimely (Doc. 24, p. 5/28).

Hanks filed a third grievance on January 30, 2014, which again referenced the October 25, 2013 incident (Doc. 24, p. 8/28). Hanks included a one-sentence note on the side of that grievance which stated that any previous grievance submitted on the October 25, 2013 incident "was mistakently and accidentally dismissed" (Doc. 24, p. 8/28). Heyse rejected that ARP because she had responded to the ARP filed by inmate Miller, Hanks was sent a copy of that disposition, and he withdrew his January 29, 2014 grievance (Doc. 25, p. 5/28).

Hanks filed a fourth grievance on February 10, 2014 (Doc. 24, p. 6/28), requesting that his ARP be "reactivated" so that he can appeal it; it is not clear which ARP he is referring to. Hanks contends he was never provided with the dispostiion of his initial first-step grievance as to the October 25, 2013 incident, and that he had been informed that his "ARP's date which is closely similar to that of another ARP that had been previously filed on 9/24/13 which shares a close resemblance with the ARP's incident date mentioned herein that of 10/25-13" (Doc. 24, p. 6/28). Hanks contended in his grievance that, as a result of being told his previous grievance was like another one that had been filed and because he had confused it with another grievance, he accidentally withdrew the wrong ARP (Doc. 24, p. 6/28).

Section 325(F)(3)(a)(x) states: "In cases where a number of

7

offenders have filed similar or identical requests seeking administrative remedy, it is appropriate to respond only to the offender who filed the initial request. Copies of the decision sent to other offenders who filed requests simultaneously regarding the same issue will constitute a completed action. *All such requests shall be logged separately.*"  (Emphasis added.)

In the case at bar, the problem appears to be that Hanks' initial first-step grievance was not logged, assigned a number, and provided a response as required by the administrative remedy procedures, 22 La. ADC Pt. 1, § 325. Although the defendants rely on the fact that Heyse responded to Miller's grievance and sent a copy of that response to Hanks,[2] Hanks was left without recourse for an appeal because his first-step grievance was not logged and assigned a number.  Heyse does not refer to a number assigned to Hanks' grievance in her affidavit (though she refers to the number assigned to Miller's grievance), there is no number assigned to Hanks' grievance in defendants' exhibits, and the response to Miller's grievance does not also reference a number for Hanks' grievance (Doc. 24).  Defendants rely on the above-cited rule to justify the manner in which they responded to Miller's and Hanks'

---

[2] The undersigned further notes that this does not appear to be the type of common grievance filed by multiple defendants (such as everyone being served cereal with maggots for breakfast one morning) that was contemplated by the rule as capable of being handled by a single response.  Instead, Miller and Hanks each had individual complaints about lack of protection and personal safety.

8

grievance. However, they failed to comply with that rule when they failed to log Hanks' grievance separately. To correctly comply with the Louisiana prison administrative remedy procedures, Heyse should have logged Hanks' grievance and included both Miller's and Hanks' grievance numbers in the response to their grievances.

Generally, when an inmate does not receive a response to his first-step grievance, he must proceed to the second step (alleging a lack of timely response to his first step grievance) in order to exhaust his administrative remedies. However, in Hanks' case, even if he had proceeded to the second step after he did not receive a response to his first step grievance, there would not have been a grievance number to reference in his second step because his first step grievance was not logged. The way Hanks' first step grievance was handled effectively created a situation which made it appear that Hanks had not filed a first step grievance at all and precluded Hanks from appealing through a second step grievance.

When Hanks, instead, filed a second first-step grievance, it was denied as untimely. All of Hanks' subsequent attempts to correct the problem were rebuffed by WCC officials.

In rare situations where inmates, through no lack of diligence on their part, have genuinely been precluded from completing the applicable administrative grievance procedure, courts have waived the exhaustion requirement or excused the inmate from having to satisfy the requirement. Francois v. Rigdon, 2009 wl 1379723, *5

(E.D.La. 2009), citing Crawford v. Dretke, No. C-04-335, 2007 WL 172628, *5-8 (S.D.Tex. 2007), and Days v. Johnson, 322 F.3d 863, 866-867 (5th Cir. 2003)(because the inmates' first step grievance forms had been returned unprocessed by prison officials, the respective courts determined that the plaintiffs had exhausted the administrative remedies available to them).

Since Hanks has diligently pursued his administrative remedies at WCC and, through no fault of his own, has been precluded from completing the process because of errors made by WCC officials in handling his grievances which effectively prevented Hanks from filing a second step grievance, defendants' motion to dismiss for lack of exhaust should be denied.

IFP Status

Defendants also ask that Hanks' IFP status be dismissed with prejudice, so that he must obtain counsel prior to re-filing this suit after completing his administrative remedies.

First, IFP status has nothing to do with employing counsel. Second, Hanks' IFP status was properly supported (Doc. 2). Therefore, defendants' request that Hanks' IFP status be "dismissed with prejudice" should be denied.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Defendants' motion for summary judgment, including their "motion to dismiss Hanks' IFP status" (Doc. 24) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 17th day of October 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE